Learned, P. J.
—The plaintiff was yardmaster of the' Delaware and Hudson Railroad Company at Albany. He' had absolute control of the yard, and he had been in this-employment for some eight years, and was, therefore, familiar with the place and with the risks of the business.. The yard is at the south part of the city. After trains, coming from the south, have run up to the main track, through the yard to the depot and have discharged their passengers there, the custom is for the engine to take a. place at the hindermost end of the train and to draw the cars down upon the same main track partly through the-yard until it comes to the switch; then the engine pushes, the cars upon the switch track called the “run around.” Thus it will be seen that in going upon the “run around the cars in the present case were ahead and the engine was', pushing.
In thus bringing the cars to this yard for storing, it was necessary to have regard to incoming trains on the- *195 main track so as not to interfere with them. The rules say that passenger trains, after discharging their passengers, become “ second-class,” and that second-class trains must, when possible, take the switch so as to leave .the road entirely clear for first-class trains at least ten minutes before their arriving time.
The West Shore train by which plaintiff was injured was -due at the depot at three o’clock. The evidence is that it was there on time. A train of the Delaware and Hudson Railroad was due at Kenwood Station, about 500 feet south ■of the yard, at 3.26. There is some conflict as to the time which it took to go from the depot to the switch in the yard and thus upon the “run around” track. One witness says they were on the “run around ” by 3.15; others place the time as late as 3.22 or 3.26.
Next west of the main track lay the “run around,” beginning at the switch; next west of that is the “slaughter-house” track and next west of that a htttle switch track called “ Zimmerman’s.” There was a cabbage car standing partly on the “Zimmerman ” track and partly on the “slaughter-house.” The plaintiff had caused an engine to be taken southward on the “ run around ” and then up on the “slaughter-house” to this cabbage car.
The plaintiff had ridden down a part of the distance on this engine, and jumped off right by the cabbage car, at the foot of Second Ave. He then walked down to the “ Spelman” switch,which connects the “ slaughter-house and Zimmerman, perhaps 10C feet or more. Ho turned the switch and walked north between the “run around ” and the “slaughter-house,” going across ahead of the engine that stood on the “ slaughter-house.” Then he walked north about 100 or 150 feet, when he was hit. There was a space of about six feet between the “ run around ” and the “ slaughter-house ” track; but the plaintiff, instead of walking in this space, walked on the ends of the ties, of the “ run around” track. He did not look to see whether a train was coming.
The West Shore train by which plaintiff was hit, had necessarily come to a stop below the switch. It consisted of four cars and an engine; making about 280 feet in length. The plaintiff estimates that it was 150 feet from the “run around ” switch to the place where he was struck. The train therefore would have moved only about that distance after it had come to a stop south of the switch. The freight conductor, whose business it was to take the passenger train to the yard from the depot, was on the north end of ■ the baggage car. He saw the plaintiff while the train was on the main track. Plaintiff was then at the Spelman .switch, and there was no obstruction between him and the *196 moving train. This conductor also saw plaintiff after the-train was on the “run around,” standing near the cabbage-car. The plaintiff says that the railing of the platform hit him; this conductor says that the platform cleared him, and thinks plaintiff received what he calls, a rolling hit. By this he seems to mean that plaintiff, by turning his. body when in this close proximity to the car, came in contact with it, and was thrown down.
Now without inquiring as to the defendant’s negligence, it. seems plain to us that the plaintiff’s negligence contributed to the injury. It is true that he says he thought that no-train would at this precise time be coming on the “run around.” But the trains on the “run around” have no schedule time. They come there as soon as they safely can, after discharging their passengers. The only restriction is one intended to keep the main track clear from incoming trains. The plaintiff was familiar with the yard. There-was no necessity for him to walk upon the ties, for there-was sufficient space between the tracks where he would have been in safety. He walked on the ends of the ties, where the cars projecting beyond the rails, would hit him. He must have known that the cars projected over the rails, and that he was in a place of danger if a train should come-in. He did not look back in the direction from which these-trains were accustomed to enter the yard. Evidently he trusted to his belief that a train ought not. to come at this, time. This was negligence. He had no right to assume that a train would not come on this track. If in the discharge of his duties, it had become necessary for him to Walk upon the track, another condition would have arisen.. But there was no such necessity. He says himself, that he-cannot tell why he walked on the ties; and that if he had looked, he probably would have seen the car.
In one respect, his position may have involved greater risk than a position on the track itself. For the conductor might naturally think that the plaintiff was far enough away not to be hit, and therefore might not take the precautions which he would have taken in respect to a person directly upon the track. Indeed it seems that the plaintiff nearly escaped being hit, and possibly he thought himself to be so far away that he neglected to look out for the cars.
At any rate, we think that the accident was due in part' to his own negligence, and that he cannot recover. There-are some other questions presented, which we consider it unnecessary to examine in this view of the case.
New trial granted on the exceptions. Verdict set aside,, costs to abide event.
Landon and Ingalls, JJ-, concur.